[Civ. No. 11308. First Appellate District, Division One.—February 14, 1941.]

MOTOR TRADING COMPANY (a Corporation) et al., Respondents, v. RAY INGELS, as Director of Motor Vehicles, etc., et al., Appellants.

Earl Warren, Attorney-General, and Frank Richards, Deputy Attorney-General, for Appellants.

Tripp, Penney & Callaway and George Penney for Respondents.

WARD, J.—Appeal by officials of the Department of Motor Vehicles from a decree enjoining them from enforcing the provisions of chapter 705, Statutes 1937 [Deering's Gen. Laws, 1937, Act 5132] of the State of California against six different plaintiffs who joined in bringing the suit, setting up separately the same cause of action. Three of the plaintiffs are California corporations; one, a copartnership with its principal place of business in this state, and two are individuals, residing in this state. The sole occupation of all plaintiffs is the business of buying, selling and trading used motor vehicles.

The statute requires that ''Every dealer in used, or secondhand, motor vehicles who is a nonresident of this State or who does not have a permanent place of business in this State, and every other dealer who brings any used, or secondhand

motor vehicles into this State for the purpose of sale or resale except as a trade-in on a new motor vehicle or another used motor vehicle, shall within ten days from the date of entry of said motor vehicle into the limits of this State, register such motor vehicle with the Department of Motor Vehicles . . . and shall before said . . . vehicle is sold or offered for sale, execute a bond with a surety company . . . as surety thereon, payable to the Department of Motor Vehicles for the use and benefit of the purchaser and his vendees, and conditioned to pay all loss that may be occasioned by reason of the failure of the title of such vendor or by reason of any fraudulent mis-representations or breaches of warranty as to freedom from liens of the motor vehicle being so sold.'' A fee of $5 is payable on the approval and filing of each bond. The statute further provides: ''Every person, firm or corporation upon the completed sale and delivery of any used, or secondhand, motor vehicle shall within 24 hours thereof deliver to the vendee, and indorsed according to law, a certificate of owner-ship, and a certificate of registration, issued for said vehicle by the Department of Motor Vehicles of this State.'' Viola-tion of the above provisions of the act constitutes a misde-meanor and in addition no action may be maintained to re-cover the vehicle or any part of its selling price. (Stats. 1937, p. 1979.)

Respondents contend ''That Chapter 705, Statutes of 1937, of the State of California is violative of (1) the 'equal pro-tection' and 'due process' clauses of the Fourteenth Amend-ment of the Constitution of the United States, (2) Article 1, section 21 of the Constitution of the State of California, and (3) the 'commerce' clause of Article 1, Section 8, of the Con-stitution of the United States.''

 Whatever niceties of distinction in classification there may be between certain groups of dealers, between dealers and nondealers, and between used or secondhand motor vehicles for sale and for trade-in purposes, there is still a clear and cer-tain distinction as a basis of classification between local and out of the state used or secondhand·cars for sale or resale. We do not find it necessary, so far as resident dealers or those having a place of business in this state are concerned, to go beyond the ''commerce clause'' to decide this appeal.

The evident purpose of the statute is to protect purchasers of used or secondhand cars brought from other states against

the risk of failure of title due to the fact that the car has been stolen or is subject to mortgage or contract in another state.

Appellants first contend that the legislature was attempting to deal with a class which caused the evil. However, the trial court found: "The number of instances of failure of title in the motor vehicles brought into this State by dealers thereof for the purpose of resale are extremely few and there is no evidence that the instances of such failure of title in the vehicles brought in by dealers are as great or greater than in the cases of motor vehicles either brought into the State by individuals for the purpose of resale or by automobile dealers for the purpose of trade-in on new or used motor vehicles. On the contrary, there is evidence of a considerable number of cases of failure of title in new automobiles sold in this State whether brought into this State from outside thereof or not and also in the case of the sale of used automobiles brought into this State by individuals. A large number of used automobiles are brought into this State for the purpose of resale by individuals other than dealers. The peculiar danger sought to be alleviated by the instant legislation is not peculiar to the business of bringing in used automobiles by dealers for the purpose of resale but extends to the business of selling new automobiles of intrastate origin and to the sale of used automobiles of both intrastate and extrastate origin by individuals." The correctness of this finding is not attacked.

The trial court also found the fee was arbitrary, excessive and bore no reasonable relation to the expressed purpose of reimbursing the Department of Motor Vehicles for expenditures necessary in the administration of the act; that the provisions requiring the dealer to deliver to the vendee within twenty-four hours of sale and delivery of any used vehicle brought into the state for the purpose of sale or resale, a certificate of ownership endorsed according to law, also a certificate of registration issued by the Department, was an unreasonable requirement in that it prescribed so short a period for performance that it was impossible for plaintiffs to comply therewith, and that its enforcement would greatly damage plaintiffs' lawful business; that the bond requirement discriminates against plaintiff dealers who bring used cars into the state for the purpose of resale in favor of dealers who bring them in for purposes of trade-in, and of individuals who bring them in for resale; finally, that "Such require-

ments constitute protective barriers against the interstate traffic in which the plaintiffs are engaged.''

In support of appellants' contention that the state statute is not in contravention of the commerce clause, reliance is placed upon *State ex rel. Leathers* v. *Coleman*, 123 Fla. 23 [166 So. 226]. We agree with the holding in that case, based as it is on the often-declared principle that when goods come to rest and become intermingled with general property in the destination state they become subject to the laws of that state. It is likewise true that when matters affect interstate commerce only incidentally, the state may act in behalf of the interests of the state, but may not under the guise of local regulation discriminate against property having its origin in another state. In *Best & Co., Inc.,* v. *Maxwell,* 311 U. S. 454 [61 Sup. Ct. 334, 335, 85 L. Ed. (Adv. Opn.) 274], the court stated: ''The commerce clause forbids discrimination, whether forthright or ingenious.'' While it is true, however, that there is language in the Florida case (*State ex rel. Leathers* v. *Coleman, supra*) supporting appellants' position, there is a factual and basic difference in the cases. In the instant case, the requirement of the bond was found to be burdensome and the fee excessive; in the Florida case the imposition of the bond, the fee, etc., was not found to be unreasonable or burdensome.

The Florida case, decided in 1936, was not followed in 1937 in *Park McLain, Inc.,* v. *Hoey,* 19 Fed. Supp. 990, wherein the Florida case was considered in connection with a similar North Carolina statute. In the Park McLain case, the court (p. 993) said: ''As both the bond and the fee required by the statute here under consideration constitute a clear discrimination against used automobiles of foreign origin, the provisions requiring them must be held invalid under the commerce clause of the Constitution. . . . If it is thought that the sale of such cars furnishes peculiar opportunities for fraud, the answer is that if regulation of interstate commerce in used cars is deemed desirable, it must be remembered that it is Congress, and not the State Legislatures, to whom the people have delegated the power of regulating such commerce.'' In *Welton* v. *State of Missouri,* 91 U. S. 275, 281 [23 L. Ed. 347], the court said: ''The power which insures uniformity of commercial regulation must cover the property which is transported as an article of commerce from hostile or interfering legislation, until it has mingled with and

become a part of the general property of the country, and subjected like it to similar protection, and to no greater burdens.''

In the Park McLain case (p. 993), the court quoted from *Howe Machine Co.* v. *Gage,* 100 U. S. 676, 678 [25 L. Ed. 754], as follows: '' 'A law which requires a license to be taken out by peddlers who sell articles not produced in the State, and requires no such license with respect to those who sell in the same way articles which are produced in the State, is in conflict with the power of Congress to regulate commerce with foreign nations and among the several States. This power applies to articles taken from one State into another, until they become mingled with and a part of the property of the latter, *and thereafter protects such articles from any burden imposed by reason of their foreign origin.*' ''

*Bender* v. *Connor,* (Conn.) 28 Fed. Supp. 903, was dismissed for want of jurisdiction. The court stated that the proceeding should have been started in the state court ''where it belongs''. The case involved a similar statute providing for fees to be paid on registration of used cars brought into the State of Connecticut for the purpose of sale or resale, those brought in for ''trade-in'' purposes being excepted. The court, citing the Park McLain case, referred to the situation as presenting ''a substantial, even grave, constitutional issue.''

In *Ingels* v. *Morf,* 300 U. S. 290 [57 Sup. Ct. 439, 81 L. Ed. 653], the caravaning act of California requiring a fee of $15 was held unconstitutional in that it was an excessive charge and imposed an unconstitutional burden upon interstate commerce. In *Clark* v. *Paul Gray, Inc.,* 306 U. S. 583 [59 Sup. Ct. 744, 83 L. Ed. 1001], the court upheld a second California Caravan Act, but upon lack of proof that the fees were excessive. In the present case, respondents' claim of excessiveness of the fee is not challenged by appellants, their contention being that when the power to tax exists, the extent of the burden is a matter for the discretion of the lawmakers.

In its practical operation, the provisions of the statute in question discriminate against dealers in interstate commerce by arbitrary classification and the imposition of onerous conditions based solely upon the origin of vehicles in another state. They are therefore in contravention of the ''commerce clause''. (Const. of the United States, art. I, sec. 8; *Foster Fountain Packing Co.* v. *Haydel,* 278 U. S. 1 [49 Sup. Ct. 1,

73 L. Ed. 147]; *Buck* v. *Kuykendall*, 267 U. S. 307 [45 Sup. Ct. 324, 69 L. Ed. 623]; *Baldwin* v. *G. A. F. Seelig*, 294 U. S. 511 [55 Sup. Ct. 497, 79 L. Ed. 1032]; *Asher* v. *Ingels*, 13 Fed. Supp. 654; *Park McLain, Inc.*, v. *Hoey*, *supra*; *Welton* v. *State of Missouri*, *supra*; *Morf* v. *Ingels*, 14 Fed. Supp. 922, affirmed in 300 U. S. 290 [57 Sup. Ct. 439, 81 L. Ed. 653]; *Sproles* v. *Binford*, 286 U. S. 374 [52 Sup. Ct. 581, 76 L. Ed. 1167]; *Traveler's Ins. Co.* v. *Connecticut*, 185 U. S. 364 [22 Sup. Ct. 673, 46 L. Ed. 949]; *Fox* v. *Standard Oil Co.*, 294 U. S. 87 [55 Sup. Ct. 333, 79 L. Ed. 780]; *Bender* v. *Connor*, *supra*; *Howe Machine Co.* v. *Gage*, *supra*.)

In *Best & Co., Inc.*, v. *Maxwell*, *supra;* the court said: ''The freedom of commerce which allows the merchants of each state a regional or national market for their goods is not to be fettered by legislation, the actual effect of which is to discriminate in favor of intrastate businesses, whatever may be the ostensible reach of the language.''

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.