## MATSON NAVIGATION CO. et al. v. STATE BOARD OF EQUALIZATION OF CALIFORNIA.

No. 346. Argued January 17, 1936.—Decided March 2, 1936.

*Mr. Maurice E. Harrison,* with whom *Messrs. Herman Phleger* and *Gregory A. Harrison* were on the brief, for appellants.

*Mr. H. H. Linney,* Deputy Attorney General of California, with whom *Mr. U. S. Webb,* Attorney General, was on the brief, for appellees.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The California Bank and Franchise Tax Act declares: Every business corporation, with exceptions not here material, "shall annually pay to the state, for the privilege of exercising its corporate franchises within this state, a tax according to or measured by its net income" to be computed at the rate of four per cent. upon that income for the preceding year. § 4. If all the corporation's business is done in California, the tax shall be computed on its entire net income; if not, on that portion which is derived from business done within the State. § 10. Net income is the revenue from all sources less expenses, losses, bad debts, taxes, depreciation, depletion, etc. §§ 6, 7 and 8.\*

Appellants were incorporated under the laws of California and, for purposes of taxation, are deemed affiliated. § 14. . Matson Navigation Company and the Oceanic Steamship Company, in addition to doing substantial intrastate business in California, were engaged in transportation between ports on the Pacific coast in the United States and ports in Hawaii, the South Sea Islands, Australia and New Zealand. The Matson Terminals, Inc., had no 1930 net income from interstate or foreign com-

---

\* Act approved March 1, 1929, Cal. Stats. 1929, p. 19, as amended June 11, 1929, Cal. Stats. 1929, p. 1555.

merce. In March, 1931, appellants made a consolidated return showing for 1930 net income from intrastate business of $730,357.81 and from interstate and foreign business of $2,526,148.22. They maintained that the tax should not be more than four per cent. of their net income from intrastate business. But the tax commissioner held that there should be included in the computation the part of their net income from interstate and foreign commerce that was attributable to California, found to be 22.2%, and on that basis he assessed an additional tax. The state board of equalization sustained the additional assessment. The case was taken on writ of review to the state supreme court and there, contrary to appellants' contentions, it was held that the act as construed by the tax commissioner is not repugnant to the commerce clause of the federal Constitution or to the due process or equal protection clause of the Fourteenth Amendment. 3 Cal. (2d) 1; 43 P. (2d) 805.

The only question here is whether consistently with these constitutional provisions there may be included in the base, to which the rate of four per cent. was applied, any part of net income derived from appellants' interstate and foreign commerce.

■ Does the tax burden interstate commerce? There is no controversy as to the amount, if any, that may be apportioned to California for the purpose of computing the tax. The state supreme court held that the act imposes a tax for the privilege of exercising corporate franchises and extends to every corporation, foreign or domestic, which is engaged in interstate or foreign commerce "so long as such corporation is doing some intrastate business." Appellants' franchises, including the right to be corporations empowered to do business in corporate form in accordance with California law, were granted to them by the State, and undoubtedly the State may tax the privilege of exercising the franchises. *St. Louis S. W. Ry.*

v. *Arkansas,* 235 U. S. 350, 366–367. *Detroit Bridge Co.* v. *Tax Board,* 287 U. S. 295. *Anglo-Chilean Nitrate Corp.* v. *Alabama,* 288 U. S. 218, 224. Unquestionably annual profits, gains or net income derived from business done within the State is an indication sufficiently significant to be deemed a reasonable base on which to compute the value of that use. Cf. *Air-Way Corp.* v. *Day,* 266 U. S. 71, 83. Our decisions demonstrate that a state tax on gross earnings derived from interstate commerce is a burden upon that commerce and repugnant to the commerce clause. *Philadelphia & Southern S. S. Co.* v. *Pennsylvania,* 122 U. S. 326. *Galveston, H. & S. A. Ry. Co.* v. *Texas,* 210 U. S. 217. *Meyer* v. *Wells, Fargo & Co.,* 223 U. S. 298, 300. *New Jersey Telephone Co.* v. *Tax Board,* 280 U. S. 338, 346. Cf. *Pullman Co.* v. *Richardson,* 261 U. S. 330, 338. They also definitely show that a State may tax net income derived from a domestic corporation's business—intrastate, interstate and foreign. *U. S. Glue Co.* v. *Oak Creek,* 247 U. S. 321, 328. *Shaffer* v. *Carter,* 252 U. S. 37, 57. *Atlantic Coast Line* v. *Daughton,* 262 U. S. 413, 420, 422. Cf. *Peck & Co.* v. *Lowe,* 247 U. S. 165. *National Paper Co.* v. *Bowers,* 266 U. S. 373, 377. And net income justly attributable to all classes of business done within the State may be used as the measure of a tax imposed to pay the State for the use therein of the corporate franchises granted by it. *Bass, Ratcliff & Gretton, Ltd.,* v. *Tax Commission,* 266 U. S. 271, 277. *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, 120. Cf. *Hans Rees' Sons* v. *North Carolina,* 283 U. S. 123, 129 *et seq.* The act as construed below does not violate the commerce clause.

■ Appellants suggest that the additional tax has no relation to the privilege of exercising their corporate franchises and that the State, by enforcing it, would deprive them of property without due process of law. They rely on *Hans Rees' Sons* v. *North Carolina, supra.* We

there held that a method of allocating, for taxation, to a State that part of the income of a foreign corporation which bears the same ratio to its entire net income as the value of its tangible property within that State bears to the value of all its tangible property works an unconstitutional result if the part of the income thus attributed to the State is out of all appropriate proportion to the business there transacted by the corporation. There is nothing in that decision to support appellants' contention. In that case the question was as to apportionment of income to the taxing State. The controversy now before us concerns the amount to be paid for the privilege of using in California corporate franchises granted by that State to appellants. No question of apportionment is here involved. The tax commissioner's determination, 22.2%, was not disturbed by the board of equalization or the supreme court and appellants do not in this court challenge the use of that ratio. As above shown, net income from appellants' intrastate, interstate and foreign business attributable to California may be taken into account in computing the tax. As the taxing jurisdiction of California extends to that income, the use thereof to compute the tax may not be said to be arbitrary, capricious or in violation of the due process clause of the Fourteenth Amendment.

■ Appellants insist that by enforcement of the tax in question the State would deny them the equal protection of the laws. They say: The tax is on the doing of business; it would be void if imposed on the doing of interstate and foreign business and can only be upheld as to intrastate business. Many corporations subject to the tax do only the latter. Others do both. The basis of the tax imposed on members of the class first mentioned is net income from intrastate business while the basis of that exacted from members of the other class is net income from all business. The act imposes no tax

on corporations engaged exclusively in interstate and foreign business.

The differences portrayed in the argument of appellants do not deny them equal protection of the laws. The measure of the tax is the total net income attributable to California; it does not depend upon the net derived from business wholly within or that partly within and partly without the State. Gains from intrastate business may be wiped out by losses sustained in interstate or foreign business and vice versa. The basis of the classification is not the kind of business—whether intrastate or otherwise—from which the income is derived; it is the exclusion of all income attributable to business done outside the State. The measure of the exaction does not lack uniformity because of differences in the amounts of net incomes attributable to California. Appellants' contention is not supported by the fact that there are or may be substantial differences between amounts and sources of net incomes of corporations subject to the tax. The rate is uniform; no discrimination results from its application.

There is no merit in the suggestion that failure of the act to extend to foreign corporations exclusively engaged in interstate or foreign commerce in California constitutes an unconstitutional discrimination against appellants. A foreign corporation whose sole business in California is interstate and foreign commerce cannot be subjected to the tax in question. *Alpha Cement Co.* v. *Massachusetts,* 268 U. S. 203, 216 *et seq.* *Anglo-Chilean Nitrate Corp.* v. *Alabama, supra.* The submission by the State to the commerce clause cannot be held to violate the equal protection clause. *Des Moines Nat. Bank* v. *Fairweather,* 263 U. S. 103, 116.

*Judgment affirmed.*