PETER R. ARSLAIN, *d.b.a.* ODORLESS DRY CLEANING CO. *et al.* *v.* GEORGE P. ALDERSON, *State Tax Commissioner, etc.*

(No. 9551)

Submitted April 4, 1944. Decided June 13, 1944.

*George G. Bailey* and *McGinley, Paull & Petroplus,* for appellants.

*Ira J. Partlow,* Acting Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for appellee.

LOVINS, JUDGE:

The State Tax Commissioner assessed privilege taxes against plaintiffs on the basis of all gross income received by them. This suit challenges the validity of his action as to that part of the gross income received from services furnished persons residing in the State of Ohio.

Peter R. Arslain, Fred Petrel, Ben Resnick, E. J. Shively and White Swan Company, a corporation, filed their bill of complaint in the Circuit Court of Ohio County, in which they prayed an injunction inhibiting the State Tax Commissioner from collecting the assessed taxes and also that the assessment against them be held void.

A temporary injunction restraining the tax commissioner was awarded. Subsequently, Chauncey T. Hatcher on his intervening petition was made a party plaintiff and awarded a temporary injunction, and George P. Alderson, successor of Ernest K. James, as State Tax Commissioner was made a party defendant.

Defendant filed his answer, admitting the facts alleged in the plaintiff's bill of complaint, and also filed a written motion to dissolve the temporary injunctions. No evidence was taken, and after a hearing on the pleadings

and on the motion to dissolve, the trial court dissolved the temporary injunctions and dismissed the plaintiff's bill and the intervening petition, and this appeal was granted to review that decree.

The facts are as follows: Plaintiffs are engaged in the business of cleaning, dyeing and repairing wearing apparel and household furnishings at their plants and establishments situate in the City of Wheeling, West Virginia, where all the service is performed except transportation under Class 2 service hereinafter mentioned. They have a common method of doing business. They perform services dealing directly with individuals who desire such service, and also furnish services to other persons engaged in business similar to theirs, who, in turn, deal directly with the public. As a part of the services rendered by them, plaintiffs furnish hangers, garment bags, moth proof bags and the materials necessary for alteration and repair of the wearing apparel and household articles. Two classes of services are furnished by plaintiffs. Class 1 — the customer brings the articles to the establishment or plant, and when the same are cleaned or repaired, the customer calls for the articles, pays cash and takes them away; Class 2 — plaintiffs' vehicles call for the articles at the homes or establishments of their customers, transport them to plaintiffs' plants and, after the performance of the necessary service, return them to their customers. Persons receiving Class 2 service are charged a higher price therefor than those receiving Class 1 service.

Plaintiffs have a number of customers in the State of Ohio. The wearing apparel and articles of household furnishings are transported from the homes or establishments of customers in the State of Ohio to plaintiffs' plants in the City of Wheeling, where the work is done, and thereafter the garments and other articles are returned to their owners in the State of Ohio.

That part of plaintiffs' income derived from services rendered to residents of the State of Ohio during the years 1934-38, inclusive, was not included in their returns

of gross income. The State Tax Commissioner made an additional assessment against plaintiffs because of their failure to include in their returns the amounts so received, advised plaintiffs of his intention to enforce the collection of the assessments so made, and thereafter this suit was instituted.

A number of assignments of error are made by plaintiff, all being grounded on the following: (1) That the assessments of privilege tax measured by the total gross income is unlawful, being a burden on interstate commerce as to that part of the gross income received from customers residing in the State of Ohio; and (2) that the statute under which the taxes were assessed, as well as the assessment thereof, is discriminatory for the following reasons: (a) that persons in this State who sell goods in interstate commerce are not required to pay taxes measured by the gross income derived from such sales: and (b) that persons who sell goods in intrastate commerce at wholesale pay a lesser rate than plaintiffs and other persons engaged in furnishing services on a wholesale basis.

The instant case is to be distinguished from the case of *Harper, Executrix, etc.* v. *Alderson,* decided by this Court on March 28, 1944. In the *Harper* case it was held that persons owning towels, linens and like articles, who deliver such articles to other persons for use, and thereafter reclaim the articles for the purpose of laundering them, is engaged in the business of collecting income from the use of personal property rather than the business of furnishing a service. It was also held that although the articles be laundered and renovated at an establishment in the State of West Virginia that such acts are incidental to the letting of the chattels for hire which was the main purpose of the transaction, that when furnished for use in other states necessitating transportation across a state line, a transaction in interstate commerce resulted and the assessment of privilege tax, as provided in Chapter 86, Acts of the Legislature, 1935, Section 2, subsections-(h) and (i) constituted an impedi-

ment to such commerce. In this case the chief object and purpose of the transactions between plaintiffs and their customers is to clean and repair articles belonging to the latter, which services are performed wholly within the State of West Virginia.

The system of dual sovereignty established by the Constitution of the United States and the constitutions of the several states is the origin of the perennial. question whether a tax or excise impedes the flow of commerce between the states. The general rule is that a state cannot levy and collect a tax or impost which impedes or has the effect of regulating commerce between the states or between states and foreign countries, or which infringes on the power of Congress over the subject. *Gibbons* v. *Ogden,* 9 Wheat. 1, 186, 6 L. Ed. 23; *Mc-Goldrick* v. *Berwind-White Co.,* 309 U. S. 33, 45, 60 S. Ct. 388, 84 L. Ed. 565. It must first be decided whether the transaction is, in fact, interstate commerce before the constitutional inhibition is applicable. The ramifications of a business of any size of necessity indirectly involve interstate or foreign commerce. The raw materials out of which some articles of commerce are manufactured frequently are produced, and must be transported from, the state where produced to the state where they are finally prepared for sale or consumption. Articles of lasting and permanent nature may be manufactured or produced in one state, and transported to another, where they may be taxed on an *ad valorem* basis as other property therein.

The problems here presented are not susceptible of determination by a rule of general and inflexible application, as practical rather than logical distinctions must be applied. *Western Live Stock* v. *Bureau,* 303 U. S. 250, 259, 58 S. Ct. 546, 82 L. Ed. 823.

Interstate transportation of property is not always a sufficient indicium to characterize transactions as interstate commerce. If the transportation across state lines is in aid of, or incidental to, intrastate activities, the assessment by a state of a privilege tax measured by

gross income from such activities is not an impediment to, regulation of, or burden on interstate commerce. *Department of Treasury* v. *Ingram-Richardson Mfg. Co.,* 313 U. S. 252, 61 S. Ct. 866, 85 L. Ed. 1313; *Western Live Stock* v. *Bureau, supra.* The making of a contract in the State of Ohio by plaintiffs and their customers to clean and repair articles belonging to the latter at a place within the State of West Virginia does not give the transaction such interstate character as to exempt plaintiffs from the privilege tax imposed by Chapter 33, Acts of the Legislature, First Extraordinary Session, 1933, and Chapter 86, Acts of the Legislature, 1935, the acts being without material difference. *Department of Treasury* v. *Wood Preserving Corp.,* 313 U. S. 62, 61 S. Ct. 885, 85 L. Ed. 1188; *International Harvester Co. et al.* v. *Department of Treasury,* decided by the Supreme Court of the United States May 15, 1944, not yet reported.

The primary purpose of the service furnished by plaintiffs to the patrons and customers in the State of Ohio, as well as the State of West Virginia, is to clean and repair wearing apparel or other articles which belong, not to the plaintiffs, but to their patrons. Transportation of the articles from the State of Ohio into the State of West Virginia is incidental and in aid of that purpose; and the attainment thereof is an activity carried on wholly within West Virginia.

We are cited to a number of cases decided by the Supreme Court of the United States which establish the principle that a state statute imposing a tax measured by. a percentage of the gross receipts of railroads and steamship companies is contrary to the commerce clause of the Federal Constitution. *Galveston, Harrisburg, etc. Ry. Co.* v. *Texas,* 210 U. S. 217, 28 S. Ct. 638, 52 L. Ed. 1031; *Philadelphia Steamship Co.* v. *Pennsylvania,* 122 U. S. 326, 7 S. Ct. 1118, 30 L. Ed. 1200. Rendering a service which forms a link in interstate transportation cannot be taxed under a state privilege tax statute. *Puget Sound Co.* v. *Tax Commission,* 302 U. S. 90, 58 S. Ct. 72, 82 L. Ed. 68. Services performed in interstate marketing of fruit

are not subject to a tax on gross receipts assessed by the state from which the fruit is shipped. *Gwinn, White & Prince, Inc.* v. *Henneford, et al.,* 305 U. S. 434, 59 S. Ct. 325, 83 L. Ed. 272. A radio broadcasting station, having a federal license, broadcasting from one state to another may not be assessed a privilege tax by the state of its location. *Fisher's Blend Station* v. *State Tax Com'n.,* 297 U. S. 650, 56 S. Ct. 608, 80 L. Ed. 956. A telegraph company transmitting interstate messages is not subject to a license tax levied by a state. *Leloup* v. *Port of Mobile,* 127 U. S. 640, 8 S. Ct. 1380, 32 L. Ed. 311.

The services performed by plaintiffs come within the rule laid down in the case of *Ingram-Richardson Co.* v. *Department of Treasury, supra; American Mfg. Co.* v. *St. Louis,* 250 U. S. 459, 39 S. Ct. 522, 63 L. Ed. 1084. Bearing in mind that the services performed by plaintiffs are activities carried on in the State of West Virginia and that the transportation of the articles on which work is done is only in aid of the primary purpose, we conclude that the assessment and collection of the privilege tax on the businesses of plaintiffs do not contravene Article I, Section 8 of the Constitution of the United States.

The statutes under which the defendant acted are Chapter 33, Acts of the Legislature, First Extraordinary Session, 1933, and Chapter 86, Acts of the Legislature, 1935. There is no substantial difference in the two enactments and a quotation of a part of the Acts of 1935 will suffice for the present purpose. The pertinent portions of Chapter 86, above, read as follows: "Section 2. There is hereby levied and shall be collected annual privilege taxes against persons, on account of business and other activities, and in the amounts to be determined by the application of rates against values or gross income as set forth in sections two-(a) to two-(i) inclusive, of this article. ***" "Sec. 2-(c). Upon every person engaging or continuing within this state in the business of selling any tangible property whatsoever, real or personal, *** there is likewise hereby levied, and shall be collected, a tax equivalent to one-half of one per cent of the

gross income of the business, except that in the case of a wholesaler or jobber, the tax shall be equal to fifteen one-hundredths of one per cent of gross income of the business. ***" "Sec. 2-(h). Upon every person engaging or continuing within this state in any service business or calling not otherwise specifically taxed under this act, there is likewise hereby levied and shall be collected a tax equal to one per cent of the gross income of any such business".

Section 2-(h) above is attacked as creating an illegal discrimination against the businesses and persons within its purview, and in favor of persons and businesses mentioned in Section 2-(c). The legislative authority for the assessment of privilege taxes is conferred by the Constitution of this State in the following language: "*** The Legislature shall have authority to tax privileges, franchises, and incomes of persons and corporations and to classify and graduate the tax on all incomes according to the amount thereof * * *". Section 1, Article X, Constitution of West Virginia. Statutes substantially the same as those quoted above were considered by this Court in the case of *Laing* v. *Fox*, 115 W. Va. 272, 175 S. E. 354, and their enactment was held to be a valid constitutional exercise of the power of the Legislature.

A state cannot impose a tax measured by the gross proceeds of sales of tangible property made in other states. *Crew-Levick Co.* v. *Pennsylvania*, 245 U. S. 292, 38 S. Ct. 126, 62 L. Ed. 295. A municipality having the power of taxation delegated to it by the state cannot impose a privilege tax on the proceeds of an interstate sale of tangible goods. *Bluefield Produce & Provision Co.* v. *Bluefield*, 120 W. Va. 111, 196 S. E. 568. We regard the business of the plaintiffs as an activity carried on in this State, and hence taxable under its laws. Such business is different from the business of selling tangible goods interstate. The first being subject to taxation by the State and the latter not, we fail to see any basis for comparison between them, and therefore no illegal discrimi-

888

nation occurs when the State taxes one and refuses to tax the other.

Unless the power of the Legislature over a subject matter is negatived by the Constitution, the Legislature has plenary power. *Road Commission* v. *County Court,* 112 W. Va. 98, 163 S. E. 815. We know of no provision of the Constitution which requires that the same rate be applied to all classes of businesses and callings on which privilege taxes are assessed. The Legislature may prescribe rates for different businesses and callings, but the rate of taxation must be uniform and equal within the classification and, if so, we see no constitutional objection thereto. The sale of goods intrastate is classified differently from the business of furnishing services, in which plaintiffs are engaged, and there is no constitutional inhibition of such classification. Certainly, the business of selling tangible goods is different from rendering a service for hire. We can see no reason why different rates may not be applied for the assessment of privilege taxes as has been done. We do not regard the statute under which the defendant acted and the assessment of taxes thereunder as constituting an illegal discrimination against plaintiffs and in favor of other persons engaged in other businesses classified differently from theirs.

The decree of the trial chancellor is affirmed.

*Affirmed.*