301 S.E.2d 605

**HYDRAULICS, INC., etc.**

v.

**Richard L. DAILEY, State Tax Commissioner, etc.**

and

**MORGANTOWN MACHINE AND HYDRAULICS, INC., etc.**

v.

**Richard L. DAILEY, State Tax Commissioner, etc.**

Nos. 15377, 15378.

Supreme Court of Appeals of West Virginia.

March 25, 1983.

---

G. Thomas Battle, Spilman, Thomas, Battle & Klostermeyer, Charleston, for appellee.

Chauncey H. Browning, Atty. Gen. and Robert Digges, Jr., Asst. Atty. Gen., Charleston, for appellant.

HARSHBARGER, Justice:

The state tax commissioner found Hydraulics, Inc. and Morgantown Machine and Hydraulics, Inc. liable for more business and occupation taxes than they had paid. They appealed to the Kanawha County Circuit Court and it reversed the commissioner.[1] These appeals were consolidated so that we could answer one question: whether the sale of replacement parts affixed to machinery belonging to out-of-state customers, picked up from them and brought to West Virginia for repairs, then returned to them, is taxable pursuant to W.Va.Code, 11–13–2, our state business and occupation tax.

The taxpayer corporations repair mining machinery. They have employees who regularly travel to out-of-state mines seeking equipment to repair. If they find any, they transport it to their West Virginia repair shops. The machines are inspected in West Virginia and decisions about the economic feasibility of repair are made. If a machine is irreparable, it is returned to its owner as is.

Customers have wholesale replacement parts price lists and are informed about the repairers' mark-ups or discounts. Billing is done from the West Virginia facilities and each bill separates charges for parts and labor.

The companies paid business and occupation taxes on all labor charges to out-of-state customers at the rate prescribed in W.Va.Code, 11–13–2h.[2] They did not report income from sales of parts installed on machinery belonging to out-of-state cus-

---

1. The circuit court decided only Morgantown Machine and Hydraulics, Inc., but it was agreed that its decision would control Hydraulics, Inc.'s appeal.

2. W.Va.Code, 11–13–2h. "Service business or calling not otherwise specifically taxed.

"Upon every person engaging or continuing within this State in any service business or calling not otherwise specifically taxed under this law, there is likewise hereby levied and shall be collected a tax equal to one and fifteen one-hundredths percent of the gross income of any such business."

tomers. They argue that Code, 11–13–2c,[3] the business and occupation tax section setting a rate on sales of tangible property, is inapplicable to them because their parts sales are out-of-state, and taxes on such sales violate U.S. Const. art. I, § 8, the Commerce Clause.

■ A state cannot tax gross receipts from interstate commerce because that is an impermissible burden on commerce among the states.[4] *Evco v. Jones,* 409 U.S. 91, 93 S.Ct. 349, 34 L.Ed.2d 325 (1972); *J.D. Adams Mfg. Co. v. Storen,* 304 U.S. 307, 58 S.Ct. 913, 82 L.Ed. 1365 (1938). A state can tax intrastate services, even if sales of serviced products are made to out-of-state customers. *Department of Treasury v. Ingram-Richardson Mfg. Co.,* 313 U.S. 252, 61 S.Ct. 866, 85 L.Ed. 1313 (1941), *reh. denied,* 313 U.S. 600, 61 S.Ct. 1107, 85 L.Ed. 1552.

In *Ingram-Richardson Mfg., supra,* Indiana taxed the gross receipts of Ingram-Richardson, a domestic enameler that coated stoves and refrigerators sent it by out-of-state manufacturers. Ingram-Richardson's employees solicited out-of-state orders and transported its customers' products from their plants to Indiana. Ingram-Richardson transported the products back to their customers in other states after the enameling process was finished. It contended that this was an interstate sale of enamel, but the United States Supreme Court disagreed:

The enameling process was an activity performed at respondent's plant in Indiana .... The fact that the orders for the enameling were obtained by respondent's agents and contracts were executed outside Indiana did not make the enameling process other than an intrastate activity and any the less a proper subject for the application of the taxing statute. *Western Live Stock v. Bureau of Revenue,* 303 U.S. 250, 253 [58 S.Ct. 546, 547, 82 L.Ed. 823]. *Id.,* 313 U.S., at 254, 61 S.Ct., at 867.

Privilege or franchise taxes on conducting in-state business, even though some activities involve interstate commerce, have been approved by the United States Supreme Court. *See* cases cited in Annot., Validity, under commerce clause of federal constitution, of state gross receipts or income taxes involving interstate transactions—Supreme Court cases, 34 L.Ed.2d 749, 763, § 4[c]. That court has recognized a state's right to impose excise, income or sales taxes on local events or activities despite interstate commerce involvement.[5]

We have rejected claims by intrastate businesses that solicitation of orders from out-of-state customers is not taxable be-

**3.** W.Va.Code, 11–13–2c. "Business of selling tangible property; sales exempt.

"Upon every person engaging or continuing within this State in the business of selling any tangible property whatsoever, real or personal, including the sale of food, and the services incident to the sale of food in hotels, restaurants, cafeterias, confectioneries, and other public eating houses, except sales by any person engaging or continuing in the business of horticulture, agriculture or grazing, or of selling stocks, bonds or other evidences of indebtedness, there is likewise hereby levied, and shall be collected, a tax equivalent to fifty-five one hundredths of one percent of the gross income of the business, except that in the business of selling at wholesale the tax shall be equal to twenty-seven one hundredths of one percent of the gross income of the business."

**4.** A fairly apportioned tax may be constitutional. *Standard Pressed Steel Company v. State of Washington Department of Revenue,* 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975).

**5.** *Northwestern States Portland Cement Co. v. Minnesota,* 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d

421, 67 A.L.R.2d 1292 (1959); *Joseph v. Carter and Weekes Stevedoring Co.,* 330 U.S. 422, 67 S.Ct. 815, 91 L.Ed. 993 (1947); *International Harvester Co. v. Department of Treasury,* 322 U.S. 340, 64 S.Ct. 1019, 88 L.Ed. 1313 (1944), *reh. denied,* 322 U.S. 772, 64 S.Ct. 1281, 82 L.Ed. 1597; *Department of Treasury v. Wood Preserving Co.,* 313 U.S. 62, 61 S.Ct. 885, 85 L.Ed. 1188 (1941); *Western Live Stock v. Bureau of Revenue,* 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823 (1938); *Matson Navigation Co. v. State Board of Equalization,* 297 U.S. 441, 56 S.Ct. 553, 80 L.Ed. 791 (1936), *reh. denied,* 297 U.S. 728, 56 S.Ct. 666, 80 L.Ed. 1011; *Underwood Typewriter Co. v. Chamberlain,* 254 U.S. 113, 41 S.Ct. 45, 65 L.Ed. 165 (1920); *American Mfg. Co. v. St. Louis,* 250 U.S. 459, 39 S.Ct. 522, 63 L.Ed. 1084 (1919); *United States Glue Co. v. Oak Creek,* 247 U.S. 321, 38 S.Ct. 499, 62 L.Ed. 1135 (1918). *See also* state and federal court cases upholding, against commerce clause claims, sales, income or occupation/privilege taxes for local activities with interstate ramifications: *Holland Furnace Co. v. Department of Treasury,* 133 F.2d 212 (7th Cir.1943), *cert. denied,* 320 U.S. 746, 64 S.Ct. 49, 88 L.Ed. 443; *Martin Ship Service Co. v. Los*

cause of the commerce clause. In *Arslain v. Alderson*, 126 W.Va. 880, 30 S.E.2d 533 (1944), a Wheeling, West Virginia dry cleaner picked up goods from Ohio customers, brought them to Wheeling where they were cleaned, dyed and repaired, and then returned to their owners in Ohio. We held that the interstate transportation aided or was incidental to intrastate activities, and our business and occupation tax did not burden interstate commerce. Syllabus Point 1 of *Arslain v. Alderson, supra,* ruled:

> A person engaged in the business of rendering services for hire at a plant or establishment within this State, is not engaged in interstate commerce, and he may be assessed a privilege tax measured by the gross income received, including that derived from persons and sources beyond state boundaries, notwithstanding the incidental interstate transportation of articles of personal property on which the work is done.

*See also State v. B.D. Bailey and Sons, Inc.,* 150 W.Va. 37, 146 S.E.2d 686 (1965).

Hydraulics, Inc. and Morgantown Machine and Hydraulics, Inc. separate parts and labor charges on their billings, but that does not alter the character of their activity. Replacement parts are sold to out-of-state customers only "in aid of, or incidental to" the intrastate repair activities. They could not do repairs without parts.

 Our business and occupation tax is levied on the *privilege* of selling or serving within this state, and not on the sales themselves, or on income. Code, 11–13–2, 2c, 2h; *Virginia Foods of Bluefield, Virginia, Inc. v. Dailey,* 161 W.Va. 94, 239 S.E.2d 770 (1977). A similar privilege tax in Arizona was upheld against a taxpayer's assertion that it burdened interstate truck sales to customers in New York, where the taxpayer's contracts were negotiated and made. The Arizona dealer repaired trucks

that a New York firm purchased for use in Arizona mining. Arizona's Court of Appeals wrote:

> This burden [on interstate commerce] is not present in the transaction privilege tax because only the state where the substantial business activities occurred can tax the sale proceeds. The fact that the actual place of sale was outside the taxing state does not preclude taxation.
> ... [T]here is no requirement that the sale occur in Arizona before the transaction privilege tax may be imposed. Instead, the business activities which surround the sale must occur in Arizona before the assessment of the tax is permitted. *Arizona State Tax Commission v. Southwest Kenworth, Inc.,* 114 Ariz. 433, 561 P.2d 757, 762 (1977) *cert. denied,* 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95.

We find that incidental sales of replacement parts to out-of-state customers, furthering domestic repair businesses, are subject to the business and occupation tax. The Kanawha County Circuit Court should assess appropriate tax deficiencies and penalties.

Reversed and remanded.

Angeles, 34 Cal.2d 793, 215 P.2d 24 (1950); *Barker Bros., Inc. v. Los Angeles,* 10 Cal.2d 603, 76 P.2d 97 (1938); *Jacksonville v. Florida Fresh Water Corp.,* 247 So.2d 739 (Fla.App.1971); *Sinclair Refining Co. v. Dept. of Revenue,* 50 Ill.2d 201, 277 N.E.2d 858 (1972); *Indiana Dept. of State Revenue v. Bendix Aviation Corporation,* 237 Ind. 98, 143 N.E.2d 91 (1957), *app. dismissed,* 355 U.S. 607, 78 S.Ct. 539, 2 L.Ed.2d 524; *Gross Income Tax Division v. W.B. Conkey Co.,* 228 Ind. 352, 90 N.E.2d 805 (1950), *cert. denied,* 340 U.S. 941, 71 S.Ct. 504, 95 L.Ed. 679; *In Matter of Airlift International, Inc. v. State Tax Commission,* 52 A.D.2d 688, 382 N.Y.S.2d 572 (1976).